Filed 6/23/15  P. v. Raoult CA2/6
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE, | 2d Crim. No. B256148 |
| Plaintiff and Respondent, | (Super. Ct. No. 2012004512) |
| | (Ventura County) |
| v. | |
| JEREMY EVAN RAOULT, | |
| Defendant and Appellant. | |

After a police officer arrested Jeremy Evan Raoult for possessing methamphetamine, he searched the passenger compartment of Raoult's car and found incriminating videos in a camera's digital storage.  Subsequently, the United States Supreme Court decided that officers may not search a cell phone's digital storage incident to lawful arrest.  (*Riley v. California* (2014) __ U.S.__ [134 S.Ct. 2473, 2495] (*Riley*).)  We conclude that *Riley* does not extend to the digital camera on this record, and, even if it did, the officer acted in good faith reliance on existing authority.

Raoult appeals from an order denying his motion to suppress and the judgment that followed his conviction by jury of three counts of committing lewd acts upon a child (Pen. Code, § 288, subd. (c)(1))[1]; one count of possessing a controlled substance (Health & Saf. Code, § 11377); and one count of failing to appear on bond (§ 1320.5).  We affirm.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

FACTUAL AND PROCEDURAL BACKGROUND

In 2012, Raoult was on probation following a conviction for possessing narcotics. As a term of his probation, Raoult consented to warrantless searches of his person and property "for controlled substances including marijuana and related paraphernalia . . . ."[2]

Ventura City Police Officer Arthur Gonzales stopped Raoult's car because the rear license plate was not illuminated. When Gonzales checked Raoult's records, he learned that Raoult was wanted and subject to the controlled substance probation search term.

Gonzales arrested Raoult. The parties agree that the detention and arrest were lawful.

Raoult complied with Gonzales's instructions to get out of the car. After Gonzales handcuffed Raoult, Raoult told Gonzales that he "had dope on him." Gonzales found baggies that held about 10 grams of methamphetamine in Raoult's pocket.

Gonzales searched Raoult's car and found a backpack with a camera inside. He searched through the camera's digital storage and found three videos of Raoult's 15-year-old female passenger performing sexual acts. Gonzales also searched Raoult's cell phone, but found nothing incriminating.

In July 2013, Raoult moved to suppress evidence found in his "Nikon Coolpix Camera" and in his cell phone. (§ 1538.5.) The trial court heard the motion to suppress in December 2013, about six months before the United States Supreme Court decided *Riley*, *supra*, __ U.S.__ [134 S.Ct. 2473].

Gonzales testified that, in his experience, it is common for drug users and dealers to have photographs of drugs and drug paraphernalia. He knew Raoult was

---

[2] The trial court took judicial notice of Raoult's probation terms and read them into the record. The terms are not included in the clerk's transcript.

subject only to a specific search term "[f]or controlled substances."  He was not aware of any general search term or stolen property search term.[3]

The trial court denied the motion to suppress.  It relied on then-current California precedent that held that searches of cell phones incident to lawful arrest do not violate the Fourth Amendment.  (*People v. Diaz* (2011) 51 Cal.4th 84, 93; *People v. Nottoli* (2011) 199 Cal.App.4th 531, 557-558.)

## DISCUSSION

The Fourth Amendment protects against unreasonable searches and seizures.  Generally, a nonconsensual search is only reasonable if it is made pursuant to a warrant.  (*Riley*, *supra*, __ U.S.__ [134 S.Ct. 2473, 2482].)  But warrantless searches may be reasonable under established exceptions.  (*Ibid.*)  One such exception is a search incident to lawful arrest.  (*Ibid.*)  It allows officers to search (1) an arrestee's person and the area within his or her immediate control to protect officer safety and preserve evidence (*id.* at p. 2483; *Chimel v. California* (1969) 395 U.S. 752, 762-763); and (2) the passenger compartment of an arrestee's vehicle when it is reasonable to believe evidence relevant to the crime of arrest might be found there, for the sole purpose of gathering evidence (*Riley*, at p. __ [at pp. 2484, 2492]; *Arizona v. Gant* (2009) 556 U.S. 332, 350).  Gonzales reasonably believed that evidence of drug possession might be found in the camera's digital storage because drug users and dealers commonly photograph their drugs and paraphernalia.

When Gonzales arrested Raoult, California law held that the scope of a search incident to lawful arrest extends to the contents of the arrestee's cell phone, whether the phone is on their person or in their vehicle.  (*People v. Diaz*, *supra*, 51 Cal.4th 84, 93 [the warrantless search of a cell phone within arrestee's immediate control does not violate the Fourth Amendment when incident to lawful arrest]; *People v. Nottoli*,

_____

[3] The prosecutor asserted that Raoult was also subject to a general search term as a condition of a supervised release program, but conceded that was "irrelevant for the purposes of this motion since the officer didn't know that."  The trial court agreed it was irrelevant.

3

*supra*, 199 Cal.App.4th 531, 558 [the warrantless search of a cell phone in the passenger compartment of the arrestee's vehicle does not violate the Fourth Amendment when incident to lawful arrest].)

The California's Legislature responded to *Diaz* and *Nottoli* by passing a bill that would require a warrant for a search of any portable electronic device, incident to arrest. (Sen. Bill No. 914 (2011-2012 Reg. Sess.) § 2.) Governor Brown vetoed the bill, explaining that it would "overturn a California Supreme Court decision," and "[t]he courts are better suited to resolve the complex and case-specific issues relating to constitutional search-and-seizure protections." (Governor Edmund G. Brown, Jr., letter to Cal. Sen., Oct. 9, 2011.)

After the hearing on Raoult's motion to suppress, the United States Supreme Court resolved the issue. It decided that "the search incident to arrest exception does not apply to cell phones." (*Riley*, *supra*, at p. __ [134 S.Ct. 2473, 2494].) Justice Roberts wrote for the unanimous court: "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." (*Id.* at p. __ [p. 2495].) The court refused to extend the *Gant* exception to cell phones, which would have "allow[ed] a warrantless search of an arrestee's cell phone whenever it is reasonable to believe that the phone contains evidence of the crime of arrest." (*Riley*, at p. __ [p. 2492].) It decided that proposal "would prove no practical limit at all when it comes to cell phone searches." (*Ibid*.) The court reasoned, "It would be a particularly inexperienced or unimaginative law enforcement officer who could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone." (*Ibid*.)

*Riley* was concerned that "a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house." (*Riley*, *supra*, __ U.S.__ [134 S.Ct. 2473, 2491.) An argument can be made that the digital storage of a camera and the digital storage of a cell phone are similar for purposes of the Fourth Amendment, but the argument is not supported by this record. Some digital cameras may have the capabilities of a smartphone, but there is no evidence that Raoult's camera did.

4

There is no evidence of its capabilities at all, except that it stored video footage. Nothing in the record establishes that the camera held "a cache of sensitive personal information" of the scope that supported the *Riley* court's protection of a cell phone. (*Riley*, *supra*, __ U.S.__ [134 S.Ct. 2473, 2490; *id.* at pp. 2489-2490, 2493].) The *Riley* court observed that "[t]he sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions" (*id.* at p. __ [p. 2489]), but there is no evidence that Raoult's photographs and videos were thus labeled. *Riley* does not extend to protect Raoult's camera on this record.

Because the search was justified incident to lawful arrest, we do not reach the question whether Raoult consented to a warrantless search of his person and property for "controlled substances including marijuana and related paraphernalia" as a term of his probation.

Even if the search was unlawful under *Riley*, the evidence would not be subject to exclusion. "[T]he *sole* purpose of the exclusionary rule is to deter misconduct by law enforcement." (*Davis v. United States* (2011) __ U.S. __ [131 S.Ct. 2419, 2432].) Exclusion is not a personal right designed to redress injury; rather, it is a sanction to deter future violations. (*Id.* at p. __ [pp. 2433-2434].) Thus, the exclusionary rule does not apply when police conduct a search in objectively reasonable reliance on binding appellate precedent that is later overturned. (*Id.* at p. __ [pp. 2423-2424].) Officer Gonzales searched the cell phone and camera in objectively reasonable reliance on *Diaz* and *Nottoli*. The trial court reasonably relied on the same authority.

Raoult argues that Gonzales could not reasonably rely on *Diaz* and *Nottoli* because they were uncertain and non-binding. He points out that the *Diaz* court was divided, *Diaz* and *Nottoli* were not long-standing, neither case involved a digital camera, both relied on authority that preceded modern technology, and *Diaz* anticipated that the United States Supreme Court would "reevaluate" its precedent in light of "modern technology." (*People v. Diaz*, *supra*, 51 Cal.4th 84, 101.)

But Gonzales was bound by *Diaz* and *Nottoli*, the holdings of which were sufficiently clear to trigger legislative response. As the Legislative Counsel's Digest of

5

Senate Bill No. 914 (2011 Reg. Sess.) explained, "Existing case law authorizes arresting officers, without a warrant, to conduct a search incident to a lawful arrest, including to search the contents of a cellular telephone taken from a suspect during an arrest."  If it authorized officers to search the digital contents of a phone, it authorized them to search the digital contents of a camera, which are far less sensitive.  And Gonzales could not be expected to question the veracity of *Diaz* and *Nottoli*.  The United States Supreme Court expresses a "general preference to provide clear guidance to law enforcement through categorical rules."  (*Riley*, *supra*, __ U.S. __ [134 S.Ct. 2473, 2491].)  "[I]f police are to have workable rules, the balancing of the competing interests . . . 'must in large part be done on a categorical basis—not in an ad hoc, case-by-case fashion by individual police officers.'"  (*Michigan v. Summers* (1981) 452 U.S. 692, 705, fn. 19.)  Gonzales reasonably relied on categorical binding precedent.  The evidence he found is not subject to exclusion.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

6

Kevin G. DeNoce, Judge

Superior Court County of Ventura

_____

Stephen P. Lipson, Public Defender, Michael C. McMahon, Chief Deputy, William Quest, Senior Deputy Public Defender, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Tannaz Kouhpainezhad, Deputy Attorney General, for Plaintiff and Respondent.